Good morning. Our first case this morning is Corey Morris v. Administrator of NJ State Prison. Mr. Schor. Good morning, Your Honors. Damian Schor on behalf of Corey Morris. I'd like to reserve two minutes for rebuttal. Granted. This Court certified one issue for appeal, which is whether or not trial counsel was ineffective for failing to advise Mr. Morris of the risk he faced for enhanced sentencing exposure. And the answer has to be yes. The most telling documents that establish this are a pretrial memorandum that was attached as Exhibit 13 to Mr. Morris' petition for his sentencing exposure was discussed. And in that case, in those instances, it appears that the enhanced sentence exposure was not discussed at all, at least not in terms of years. The judge said, well, how did you get to 25 years? And the trial counsel said five years for this burglary, which was later dropped, 10 years for the one robbery, 10 years for the second robbery, if you make them consecutive. Did the trial judge clearly indicate at the status conference that he was subject to the term beyond what he thought he was going to get? He didn't make it clear. He just said, is it an extended term? He said yes. The number of years in that March 31, 2003 transcript. He said it could be more than 25 years. Pardon me? He said it could be more than 25 years. Well, he didn't tell him. The court's supposed to tell him what you're looking at in terms of it's pretty clear. The Mitchell case, which I cited in my supplemental reply brief, says you have to give them a pretty good warning about what you're looking at in terms of time. And he did not get that warning. And it's not a question of what the judge told him here. The question before this court is, what did his lawyer tell him? Well, the lawyer clearly missed the boat here. So there's no question of prejudice here. Right. The big question is whether, rather, there's no question of the impropriety. The question is whether he's prejudiced because he had to be well informed. Incidentally, if we expand the record to both proceedings, it appeared. Why? How could you say that your client was not aware that he was involved in? Well, that record that you talk about expense, it wasn't given to me when I prepared. It wasn't in the district court in this case, but it was what it was within. It was within the purview of your client through both sitting through both proceedings. Again, the question is, what did his lawyer tell him? There's no question the lawyer made an incorrect decision here. The only question is whether he's prejudiced by reason of what he was told by the trial judge in both proceedings. Well, if we expand the record, if you expand the record, but I don't think you can. And furthermore, the relationship between the attorney and the client is a different relationship between that between a defendant and a judge. This attorney client relationship is one where you have to work closely together. You have to trust each other. You have to be told the truth. And it just didn't happen here. So that's where your prejudice occurs. The person that you are entrusting your liberty to is not telling you everything you need to know to make a reasoned decision. Well, but to show prejudice, you still have to show that he would have chosen to plead guilty had he had the right information and that the court would have accepted the guilty plea. Right. Correct. And we don't have anything in the record that says he wouldn't have done that. There was on the post conviction activity in the in the state court. There was no evidentiary hearing to that effect. The fact that there's nothing in the district court. Well, he pleaded he he. First of all, this is an epic case. Correct. So we have this at the state court case. Yes. And we have a very deferential standard of review. Yes. Plus, it's. And the speech I carry, he was told about a 20 year extended term. And at the at the at the actual trial, he pleaded not. He stood up and he said he was not guilty. It was his position. So the fact that at trial, he took the position he was not guilty and testified to that. The jury found he was not telling the truth. How could we with any grace toward him say that he would have accepted a plea of guilty? We're under the under Jersey law. Different than my colleagues at the other states. But under Jersey law, where I come from, you cannot accept a plea of guilty unless you say, may Copa, I am guilty and I accept that. Your your client never did any such thing. He he said he was not guilty all the way. Well, we don't know if he was working on off of bad information. That's the problem. You need an evidentiary hearing to determine what was going on in his mind at that time. But what what evidence, though, did the post-conviction review court have that supported the notion that Morris would have pleaded guilty? They looked at trial transcripts. And if you read through, there is a call. I think all the call it was in 2011, I believe, May of 2011 transcript. And the judge just goes on and on about this here and this transcript. There was no evidentiary hearing at all. He just looked at transcripts. So does that mean your answer to my question, Mr. Shore, is that there isn't any evidence that Morris would have pleaded guilty? And the reason for that was you needed to have an evidentiary. Exactly. So then your claim really is that that it was contrary to our unreasonable application of clearly established law for the state court to not hold an evidentiary hearing. I think that's a fair statement. The state court should have done it or the district court here could have done the same thing. All right. Just doesn't seem like the case was brief that way, because if the question of whether you're entitled to an evidentiary hearing, that's 2254 E2. Right. And I don't remember. I can't keep track of that. It's complicated. But I. All right. But the crux of your claim is that, I mean, there was a certification somewhere I remember seeing, but it didn't seem like it was a sworn certification. I don't believe so. I mean, there's a lot in this record. But when you get right down to it, what we do know that on a certain date, March of 2003, Mr. Morris was not getting appropriate information. Well, but we know that as Judge Count said, though, that's what we're sort of assuming. Maybe counsel will disagree with this assumption, but we're assuming that cause has been established on this record. But that only gets you halfway home. You've got to show that on this record. It was contrary to our unreasonable application of the law for the post conviction relief court to find the absence of prejudice. And I think that's what we're trying to get at is what can you point to to show that a man who had previously said I'm legally innocent and later at trial said I'm factually innocent? What do you have to counterman that to show that if he had known he would have had the chance for a better sentence, he would have admitted guilt and the trial judge would have accepted his plea of guilt? On this record, we don't have anything because we did not have a post conviction hearing in the state court. So it all comes back to the absence of an evidentiary hearing. Yes. So and so at this point, then what needs to be done is this case be sent back to the district court. And for it to be remanded there so that either an evidentiary hearing is held there or for them to send it back to state court where you can get your witnesses in and find out exactly what was going on between Mr. There's a reasonable probability that someone turned down a five year deal, a five year when he was facing a 25 year sentence, would have accepted a deal if he knew that he would ultimately receive 10 year sentence and a 16 year sentence. You're saying if he's looking at 26 years versus 25, would he have turned it down? Yeah. What's the probability they would have turned down that deal when he turned down a deal? Five years when he is facing a age, a 25 year sentence? I don't know. I think if he had the right information, which we don't know. I mean, as Samuel Johnson said, the prospect of being hanged has a tendency to cross your mind. So I think if he was told you're looking at five, you can take five or eat 25. That might have focused his concentration. He was offered a five year facing a 25 and he turned it down. Right. Yes. And then testified, testified that he was not guilty. Well, saying you're not guilty is not the same as saying you're innocent. I mean, you're saying I want the government to prove their case against me. You can't prove that I did that. That doesn't mean I'm innocent. But going back to your question, I'm drawing a blank on exactly how you worded it, but he's looking at five years as an offer, but he's being told, well, you could get 10 and 10 on top of that. I mean, the judge's discretion is to run those sentences concurrent also, if I understand New Jersey law properly. So he could have said, well, look, I'm looking at five, I'm looking at 10. I can roll the dice and go with 10. Well, a big aspect of this case, as far as I'm concerned, is whether we look at both sentences together and you're against that. And why should we look at the whole shooting match in one fell swoop? Why? How can you divide it up when you're really dealing with one sentence? Well, it's more a case of I don't think we'll talk about the sentence at this point, but I want to talk about his decision-making process and what he was given to work with. I mean, it's no secret now that he was looking at 26 years or 36 years. He ultimately got 36 years. Reduced. Yes, well, it was reduced after the fact, yes, because of the Pennington case, I believe it is. But now the way the New Jersey law is, you can't do those extended sentences on top of one another. But at the time, he might have just thought, well, I can risk a concurrent sentence of 10 years for both crimes and not worry about it or not worry about a five-year sentence. And so we can't take into account what the court said? I don't think you should, no. I think because we do not have the evidence as to exactly what transpired between this defendant and his lawyer. I know it's a bitter pill to swallow to send it back, but when you get right down to it, that's what it boils down to. I mean, what happened between Mr. Morris and his lawyer, I believe his name was Anklewicz. I was never good at pronouncing his name, but we have to know what was said there. And what would Morris have done if he had been told, you can take five and the risk is too great, you're looking at 36. We just don't have that information. The best thing to do, as I said, is send it back. Send it back to the district court, tell them to send it back to state court and give him a post-conviction hearing where he can have evidence presented. He can testify, his lawyer can testify. But doesn't he have the burden, though? I mean, this, I think, is part of, I wish we had the briefing on this 2254E2, but I think in order to be entitled to a hearing in federal court, you've got to make a showing, right? I mean, you can't just say, I might be able to marshal some evidence. You have to come forward with a showing to open the door to a hearing. I think we did make that showing. He did make it when he showed you his pre-trial memorandum, which says about 10 and 10 versus a- Well, but that goes to the cause issue, not the prejudice issue. I mean, as I understand it, Mr. Church, a hearing you would want to have would demonstrate that he would have stopped protesting his factual lack of guilt or his legal lack of guilt, had he known, and that the trial judge would have accepted the plea. What is in the record to show that that might have happened? I have to go back and dig into it again, Your Honor, but I believe it might be in his petition for certificate of appealability. Now, I see I'm out of time, so what I'm asking is that you vacate the district court's decision and send it back for further proceedings. Thank you. Thank you, Mr. Chur. Let's hear from Ms. Hadley. Good afternoon. My name is Senior Assistant Prosecutor Heather Hadley. I'm here on behalf of the appellee, the administrator of New Jersey State Prison and New Jersey Attorney General's Office. Is the standard of review AEDPA here? I'm sorry, Judge. Is this an AEDPA case? Yes. Yes, it is. So why doesn't your brief say anything about that? I apologize, Judge. I think that at this point I was focused more on the fact that it was a de novo review and the standard of review in this court. It is de novo? It is de novo, Judge. AEDPA provides for de novo review here? I know that this – I might be confusing it, but I know that this case before this court is going to be a de novo review. It's not a direct appeal. I've never heard of a – under AEDPA? Do you have any experience with AEDPA? Not – this is my first time before the Court of Appeals here for this case. I mean, the AEDPA standard of review, as your adversary would be quick to note, is one of the most deferential, difficult standards of review. It vexes criminal defense lawyers. And here you are on behalf of the state telling us that this is de novo review, not the remarkably deferential standard of AEDPA? No, Your Honor, I'm incorrect. It is AEDPA. It is – I do have my notes. It is saying – I do see that my notes are correct, that it is a higher standard with regards to AEDPA. It's not a de novo review. Okay. Well, now that we've got that out of the way, what about cause and prejudice? Do you agree that the advice of counsel was deficient here and that we should just focus on prejudice? No, I do not, Judge. Okay, then tell us why there was no cause here. I think at this point, Judge, looking at the record as a whole, as the district court was able to have that full record, it's clear that the record was not devoid of information that was given to Mr. Morris. It was clear that the attorney in this case, Mr. Enkowitz, not only was able to have his – I would say that it was not a misinformation. It was more of a miscalculation of the time that he would be looking at if he was to go to trial. It was quite clear that after the record was cleared up by the judge, which is required of the judge according to the New Jersey rules, that he is to make sure that the defendant in all cases is aware of his total exposure. And I think that it was his obligation to make sure that Mr. Enkowitz's addition in that case with regards to the sentencing exposure was complete and for the record. Was it cured, though? Was it cured by the trial judge? He never told him the exact number of years he could get. I think it is clear, Judge, because if you use this – if you use the pretrial status conference transcript in conjunction with the status conference where Mr. Morris was trying to represent himself. He never named an exact number of years that he could be incarcerated under both. He did inform him that he could be looking at an additional extended term. He never named the number of years, though. I think it's quite clear in the record that Mr. Morris was told that an extended term on a second degree would be his exposure between 10 and 20. I'm talking about the sentencing here. I'm not talking about any of the sentences. I'm talking about – you're saying that this was cured by the trial judge. And I want to – and I ask you, how could it be cured by the trial judge when he was never told what the extended sentence could be? Because Mr. Morris is now serving a 10-year sentence, which is below the range that he was actually initially sentenced to. He was sentenced to the low end of a first degree. It doesn't matter what he actually got. It matters what he was told when he's trying to make a decision. Do I plead or do I go to trial, right? I don't agree, Judge. I think that – You don't measure the efficacy of counsel's performance at the time the advice is given? No, I do not. This is sort of the most important moment, right, when a defendant is trying to determine whether to plead or to go to trial. You've got to know what your options are, don't you? That may be true in cases that were not Mr. Morris's. Mr. Morris's record in this case and his status conferences was not just one, and that is why the record is so expanded already. Mr. Morris had numerous, numerous plea offers, plea status conferences where, in fact, he was trying to represent himself and told the court that he knew the ins and outs of the sentencing guidelines. He was then told again by the judge what his full sentencing exposure could be on an extended term with numbers attached to them. That judge was aware that Mr. Morris had already had those discussions because the record was not devoid because of the pretrial conference. Taking that in itself would maybe be true for this court to look at, but Mr. Morris had more than one status. He didn't just have a plea status conference that reviewed all his trials. All right, but that was before he got a lawyer, right? No, he had a lawyer, Judge. He was trying – Mr. Anklewicz was there. He was present during that hearing. Was he representing him at that time? Yes, he was, Judge. He had a public defender. Mr. Anklewicz was appointed by the public defender's office, and he was present. And at that time, the judge indicated that Mr. Anklewicz would potentially be his attorney during trial if Mr. Morris was able to represent himself. At that time, and that's what the district court refers to, Mr. Morris at that time told the court what his plan was at trial for jury nullification, and the judge went on to explain how that's not possible. But what did Anklewicz tell Morris his exposure was if he went to trial? With regards to going back to the plea trial conference, he did say that he would be looking at 10 years, if I'm correct. And then at that time, the judge, which he should, according to New Jersey rule, ensure that all the exposure is explained to him and that he's aware of that global offer and also know what he would be potentially pleading to or getting at trial. At that time, Mr. Anklewicz said on the record that it is true he could be getting consecutive sentences. Yes, he could be getting an extended term, which would put him in the next range. We knew Mr. Morris knew what those numbers were because he wanted to represent himself and explain that he understood his full sentencing exposure with two consecutive sentences and potentially two extended terms. All right. What if we go against you on cause? What's your argument as to why there's no prejudice here? Well, there's no prejudice. Well, in New Jersey, there are no all for all forward pleas. The defendant, Mr. Morris, would have to plead to a factual basis. And in this case, Mr. Morris made it quite clear that he was not guilty of this crime. He took the oath. He went to trial and he wanted to make sure that it was told that he did not do the crime. And based on that information, the fact that Mr. Morris admitted that he did not do this crime, he was not guilty of this crime, it would be evidentiary hearing at this point would result in him essentially perjuring himself. And at that point, no judge would be able to take a plea from Mr. Morris, so there would be no end result and evidentiary hearing would provide no further information than was already provided fully in the record for Mr. Morris. I think you think you believe he completely foreclosed his changing his story or his argument at that point. Absolutely. He was once he took the stand, he took the oath and he chose to and he had a fair trial. And because he did have a fair trial and he did testify on his own behalf. And if you do look at the record, Mr. Morris made it quite clear and wanted it to be known from the very beginning of that trial that he was not guilty of that crime. And that's why an evidentiary hearing will get us no farther than we are, because Mr. Morris did a lot of talking. And he made it quite clear throughout his whole both cases as at this. He had two cases pending and made it quite clear that his position with regards to this case, that he was not guilty. He was not present. He did not. He was dealing drugs and he was not robbing the 70 year old man. It's it's quite frankly, from my point of view, I speak for myself, not my colleagues. There is no way I could accept what he did when he went to trial as what he would have done if he was had been told. The exact number extended sentence would be at which time whatever he had in his mind, he could have sobered up very quickly and said, I'll take the deal instead of shooting the dice and going for a not guilty plea. So that what he what he said at trial, I can't say is dispositive of that. He would not have accepted a plea and said, I'm guilty. We can't hold that against him. He went to trial and he did his best at trial. If he would have been told what the extended sentence was. Which was certainly different than what a public defender had indicated to him. It's a very questionable thing under it, even under whether or not he would have taken the plea. I think if you if we do look at the record, which I believe is well established. Mr. Morris was not only told that he would be he could potentially get an extended term on both cases and consecutive sentences, which ends up not being the case because he was tried for the first robbery. He was tried for that second. He cannot get an extended term. That sentence was incorrect and was corrected. And Mr. Morris is only serving a 10 year sentence with an 85 percent patrol parole and eligibility. He's not serving a 20 year sentence. He's not extended term. So essentially he's looking at he essentially got 26 years as opposed to the 25 that he was told and told over again. That he could potentially have had if he went to trial on both cases. So where is the prejudice for Mr. Morris? He turned down a five year, 85 percent offer, knowing that his exposure could still be 25 years. If we if we do not extend the record to both to both proceedings, I don't see how you could prevail on this case. There is no the record is so. Mr. Morris is Mr. Morris. Actually, in his he never certified that he would ever have taken a that he was given misinformation or that he would have taken a deal. And the fact that he testified puts us in no further position than we would have been in, because he's already testified that he did not participate in the robbery and he was not there. He said that he was doing other things. He was. If it had not been a trial, you would not have his testimony. You would just have whether he would accept or reject the plea, knowing he was facing a 26 year prison term. The New Jersey state law is clear. State versus Takeda states very clearly that a court cannot take a plea. I know. I know. I know the Jersey law very well. It's different than every other state. I participated. But it's amazing the way people sober up when they know the extent that they can be sentenced and the plea deal that they're given. Mr. Morris never sobered up. He knew from the very beginning that he was looking at more than five years. Well, he might not be a very nice boy as these things go. He's a little streperous, but it's I've seen it myself and I'm sure you have. The number of people that see the light of day when they know what they could face. Mr. Morris would never had never saw the light. I guess. I guess the point of your argument, Ms. Hadley, is that if he didn't find the possibility of 25 years persuasive to take the five year deal, he wouldn't have found the possibility of 26 persuading more persuasive. No, he's 26. The right number, though, wasn't he looking at 26 is the right. He wasn't looking at more than 26. No, potentially. No, because he can only get one extended term. They went to trial in the first robbery on the second robbery. First, they the robbery of the 60 year old man. They tried first, as opposed to this case, which was the 70 year old man. They tried second. Because of that, he could not get an extended term on two cases. So it does not matter. He would never have been. He would have never been able to and should not have been given two extended terms. And so at the very most, he was going to get was a 10 year sentence with 85 percent. And what do you have in the record besides his trial testimony about factual or legal innocence? Do you have anything in the record from pretrial hearings or other things where he is insisting that he's either legally innocent or factually innocent? The only thing in the record was when he made the motion to represent himself, that he wanted to that he wanted to tell his story in court. He wanted to represent himself and represent himself included the way that he was going to proceed to trial. He said that way before a pretrial was even scheduled for these two cases, particularly this case. And what did he say about factual or legal innocence in that regard? He focused more on jury nullification and what his purpose was to try and and let the jury know that he was that the law was not what it was, that there are other factors that go into why people are attacked by the jury system. He couldn't be held legally liable because of his ideas about what the law was. Yes. And he made that clear throughout the record that his position politically or otherwise about how he wanted to be able to prove that and show that and let the jury hear him. And even throughout the trial, he wanted his voice heard throughout the trial with regards to why he thinks this was he was falsely accused or how it was. This case was something that should not be heard. And he was not quiet about it. And it was quite clear that at that point, Mr. Morris had taken control of a lot of what he was doing in that courtroom. And the district court in the appellate division in New Jersey had the full record, as this court has, that Mr. Morris was not quiet. Mr. Morris was aware of full exposure. And just the fact just because Mr. Enkowitz did not calculate a full amount does not mean that he was misinformed. Thank you. Thank you, Miss Hadley. We'll hear Mr. Shore on rebuttal. State court findings of fact are entitled to a presumption of correctness. However, on this issue, which is the effectiveness of counsel, we have no findings of fact because there was no evidentiary hearing. As I said, were there findings of fact on prejudice? I believe there might have been, but there was no but it was not based on any testimony. No evidence was presented as well. There was. It's based on the record, though, isn't it? I mean, the record of this gentleman did tell the trial court that he was legally not guilty. Right. And did not the state post-conviction court latch onto that to say, well, if he's insisting he's not legally culpable, then I couldn't have taken a guilty plea. Isn't that the crux? Maybe I'm misstating it, but correct me if I am. I thought that was the crux of the state court's finding. Right. But the problem there is that's that's after the fact. And what we need to know is what would he have done if he'd gotten the right advice? Now, the state has referenced that to set a case in that case. I mean, there were eight days of post-conviction hearings to set are testified. A codefendant testified. His lawyer testified. Some attorney generals have testified. Prosecutors testified. The problem with it is set a case. What should not be governing your thought process here in the district. And the state court should not relied on it is to set a said during his post-conviction hearing, he said, I would have lied to get the better deal. And you don't have that kind of thing right here. You do not have more saying I would have lied and said I was guilty. He very well. We just don't know what he would have said. He should have had a hearing. We don't know. I mean, as an appellate court, but we we have a finding at seventy nine and 80 of the appendix that the quote, the defendant's decision to reject the plea bargain would not have been altered by attorney advice. That's a state court finding entitled to deference. And it is pretty heavy deference under it, is it not? It's a state court finding based on speculation. Well, we've got it. You've got to argue that it's an unreasonable application of the facts to be his finding. How can you say that? Well, a reasonable application. Because he wasn't basing those facts on a post-conviction hearing. Those facts were based on his reading of the record where he were with the hearing is not a given. I mean, that money that you seem to be arguing for per se rule. The hearing must be held by the post-conviction court at all in all instances. I think they should have discretionary, isn't it? New Jersey law. I'm not sure to tell you the truth. He couldn't. He could not rely. The post-conviction judge could not rely on anything set at trial. What I'm saying is the post-conviction judge cannot rely on what was set at trial to determine what Morris would have done if he'd been given the right information. Because you don't know what Morris would have done. We have to get Morris on the stand to say, if I had been told I was looking at this much time, I would have sung a different tune. Thank you. Thank you, Mr. Short. Thank you, Ms. Hadley. We'll take the matter under advisement.